Milo Steven Marsden (4879)
 marsden.steve@dorsey.com
William B. Prince (2653)
 prince.william@dorsey.com
Jennie B. Garner (5486)
 garner.jennie@dorsey.com
Wells S. Parker ( 11327)
 parker.wells@dorsey.com
**DORSEY & WHITNEY LLP**
136 S. Main Street, Suite 1000
Salt Lake City, Utah 84101
Telephone: (801) 933-7360
Facsimile: (801) 933-7373

   *Attorneys for Plaintiffs*

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| LARAMIDE RESOURCES, LTD., a Canadian corporation; HOMESTAKE MINING COMPANY OF CALIFORNIA, f/k/a HOMESTAKE MINING COMPANY, a California corporation, | **COMPLAINT** |
| Plaintiffs, | Civil No.:  2:08-cv-779 |
| v. | Honorable Brooke C. Wells |
| WILLIAM RICHARDSON, an individual; JOHN W. REAMS, an individual; TOMCAT MINING CORPORATION, a Colorado corporation; F. BENNION REDD, an individual; TOMMY DON HUDSON, an individual; CHRISTOPHER LEE BOUSUM, an individual; H. CLAY HUDSON, JR., an individual; and CONSTANCE HENRY, | |
| Defendants. | |

Plaintiffs Laramide Resources, Ltd. ("Laramide") and Homestake Mining Company of California ("Homestake"), for their Complaint against Defendants, state and allege as follows:

## NATURE OF THE CASE

1.      In this diversity action, Laramide and Homestake seek an order of this Court pursuant to 28 U.S.C. § 2201 declaring the rights and legal relations of the parties arising under the documents described herein, and enjoining the Defendants from acting contrary to the rights and obligations of the parties under the contracts.   Laramide and Homestake further seek damages against Defendants William Richardson ("Richardson"), John W. Reams ("Reams"), and Tomcat Mining Corporation ("Tomcat") for their breach of the covenant of good faith and fair dealing,  breach of fiduciary duty, and intentional interference with economic relations.

## PARTIES

2.      Plaintiff Laramide is a corporation governed by the federal laws of Canada having its principal place of business in Toronto, Canada.

3.      Plaintiff Homestake is a Delaware corporation having its place of business in Walnut Creek, California.

4.      Defendant Richardson is an individual residing in Albuquerque, New Mexico. Richardson is the personal representative of the estate of Frank Richardson.

5.      Defendant Reams is an individual residing in Naturita, Colorado.  On information and belief, Reams and his spouse are the sole owners and operators of Defendant Tomcat.

-2-

6.     Defendant Tomcat is, on information and belief, a Colorado corporation, with its principal place of business in Naturita, Colorado.

7.     Defendant F. Bennion Redd ("Redd") is an individual residing in Monticello, Utah.

8.     Defendant Tommy Don Hudson ("T. Hudson") is an individual residing in Rogers, Arkansas.  T. Hudson is a personal representative of the estate of T.C. Hudson.

9.     Defendant Christopher Lee Bousum ("Bousum") is an individual residing in Pawhuska, Oklahoma.  Bousum is a personal representative of the estate of T.C. Hudson.

10.     Defendant H. Clay Hudson, Jr. ("H. Hudson") is an individual residing in Pawhuska, Oklahoma.  H. Hudson is the personal representative of the estate of H. Clay Hudson, Sr.

11.     Defendant Constance Henry ("Henry") is an individual residing in Casper, Wyoming.  Henry is the personal representative of the estate of Fred Hartnett.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over Laramide's claims pursuant to 28 U.S.C. §1332(a)(2) & (3), in that Laramide is a citizen of a foreign state and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

13.     This Court has subject matter jurisdiction over Homestake's claims pursuant to 28 U.S.C. §1332(a)(2) & (3), in that there is complete diversity of citizenship between Homestake and the Defendants and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

-3-

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) in that Defendant Redd resides in this judicial district and the property which is the subject of this action is situated in this judicial district.

## GENERAL ALLEGATIONS

15.    On March 17, 1954, Homestake entered into an Agreement (the "1954 Agreement") with the holders of all the issued and outstanding stock of La Sal Mining & Development Co. ("La Sal").  At the time, La Sal had only ten (10) shareholders: T.C. Hudson, Frank Richardson, H.H. Mundy, Fred Hartnett, W.T. Hudson, H. Clay Hudson, Bennion Redd, W. Virgil Baker, Anna Rogers and W.S. Hudson (the "Original Shareholders").  La Sal's  principal assets were certain unpatented mining claims owned by, leased to, or claimed by La Sal, as described in Exhibit B to the 1954 Agreement (the "La Sal Property").

16.    Under the 1954 Agreement, Homestake obtained an option to purchase all of the issued and outstanding capital stock of La Sal (the "Homestake Option").  On executing 1954 Agreement, Homestake paid $28,762.50 for the Homestake Option.  The 1954 Agreement required the Original Shareholders, within ten (10) days of execution, to deposit with the Escrow Bank all of the issued and outstanding stock of La Sal "duly and legally signed and endorsed in blank for transfer."

17.    The Homestake Option could be exercised by providing "written notice," as specified in the Agreement, and by depositing into escrow a further "exercise" payment of $402,675.00.  Under paragraph 16 of the 1954 Agreement, the total purchase price for the stock of La Sal was $23,010,000.00.  After crediting the option and exercise payments

described above, the remaining amount was to be paid by applying a percentage of "net profits" (all as defined in paragraph 18 of the 1954 Agreement) generated by mining the La Sal properties.  The applicable net profits percentages are described in the 1954 Agreement and amendments thereto.

18.     The 1954 Agreement makes clear that,

> Homestake shall be under no obligation to make any payments on the purchase price (except the aforesaid payment of $28,762.50, and in the event that it exercises the option, the aforesaid payment of $402,675.00) other than payments measured by said net profits.

19.     Paragraphs 6 and 7 of the 1954 Agreement provide that, "[u]pon exercise of the [Homestake] option, all voting rights of said stock shall pass to Homestake or to its assigns," that "Homestake shall have all the rights of ownership of the capital stock of La Sal," and that Homestake "may, if it deems expedient at any time after the exercise of said option cause the complete or partial liquidation of La Sal."

20.     Because the 1954 Agreement gave Homestake ownership of La Sal on exercise, and because the parties contemplated that La Sal might be liquidated, Paragraph 8 of the 1954 Agreement provided that in the event that Homestake determined to liquidate La Sal, Homestake would "deposit with the Escrow Bank mortgages or deeds of trust on all real property owned by La Sal at the date of exercise of said option which shall be transferred to Homestake. . . ."  The mortgages or deeds of trust are to be reconveyed to Homestake "upon complete payment of the purchase price."

21.     In addition, Paragraph 13 of the 1954 Agreement provided:

> 13.     Until the entire purchase price shall have been paid, Homestake agrees not to transfer or assign any property owned by La Sal without written permission of Shareholders, their agents,

successors, or assigns, provided that Homestake shall have the
right at any time without securing the permission of any of the
Shareholders to cause the complete or partial liquidation of La Sal
and to transfer to Homestake or to an affiliated corporation any
property owned or possessed by La Sal.  Homestake may,
however, declare dividends from La Sal to the extent of the
earnings and profits of La Sal, including percentage depletion.

22.     Homestake exercised the Homestake Option on May 25, 1955, deposited

$402,675 into escrow, and thereby purchased all the issued and outstanding capital stock of

La Sal.  All voting and ownership rights of the capital stock vested in Homestake at that time.

On May 26, 1955,  Homestake and the Original Shareholders entered into an Agreement

amending certain terms of the 1954 Agreement not relevant here (the "Amendment").

23.     After the exercise of the Homestake Option, disputes arose between

Homestake and the Original Shareholders, or their successors in interest (collectively, the

"Shareholders") concerning various aspects of Homestake's calculation and payment of "net

profits" under the 1954 Agreement.

24.     To resolve the various claims asserted by the Shareholders, Homestake and

the Shareholders executed a Release and Agreement dated effective June 30, 1961 (the "1961

Release").  The 1961 Release was intended to fully and finally resolve the parties' disputes

regarding Homestake's calculation and payment of net profits up to the date of the 1961

Release, to clarify the definition of "net profits," and to amend the percentage of net profits

used in calculating payments going forward.

25.     The 1961 Release also amended Paragraph 13 of the 1954 Agreement in its

entirety.  As amended by the 1961 Release, Paragraph 13 reads as follows:

Anything in this Agreement to the contrary notwithstanding, all
profits and losses derived from the sale or lease of mining

machinery, equipment, tools or other personal property owned by La Sal shall be taken into account in computing net profits under paragraph 18 hereof, provided La Sal may sell or lease any such property now or at any time hereafter without the consent of Shareholders at not less than fair market value, and provided no such sales shall be made to Homestake or any of its wholly owned subsidiaries (except in the course of a complete or partial liquidation of La Sal) without the written consent of Shareholders. Homestake, without the permission of Shareholders, may cause a complete or partial liquidation of La Sal and the transfer to Homestake or to an affiliated corporation of any property owned or possessed by La Sal.  La Sal may also declare dividends to the extent of its earnings and profits, including percentage depletion, without consent of Shareholders.  La Sal shall not transfer or convey the mining properties owned by La Sal to any person or firm without the written permission of Shareholders, except to Homestake or a wholly owned subsidiary corporation in the event of a complete or partial liquidation of La Sal.

26.     In the 1961 Agreement, the Shareholders constituted and appointed a five member "Shareholders' Committee," and granted it "full power and authority to act for and in the names, place and stead of [the Shareholders] in connection with all matters which may affect the rights or interests of [the Shareholders] in said Agreements."  Except as otherwise specified, the powers of the Shareholders' Committee were to be exercised only by unanimous action.

27.     The Shareholders designated the original members of the Shareholders' Committee because they reposed special personal trust and confidence in them, and trusted and relied upon their knowledge, judgment, and discretion in matters related to the La Sal agreements.  Members of the Shareholders' Committee were, thus, to act as fiduciaries of the Shareholders.

28.     The Shareholders did not provide the members of the Shareholders' Committee with a special power of substitution, and they did not authorize the members of

the Shareholders' Committee to delegate or assign their duties or authority as members of the

Shareholders' Committee.  Rather, Paragraph 11 of the 1961 Release provides:

> In the event any member of said Shareholders' Committee shall
> die, his personal representative shall succeed such deceased person
> as a member of said Shareholders' Committee and said successor
> is hereby granted the same powers as attorney-in-fact as are herein
> granted the original members of said Committee.

29.     Under Paragraph 11 of the 1961 Agreement, only the personal representative

of a member of the Shareholders' Committee may function as a successor member of the

Shareholders' Committee.  The original members of the Shareholders' Committee were T.C.

Hudson, H. Clay Hudson, Redd, Frank Richardson and Fred Hartnett.

30.     In December of 1962, Homestake determined to liquidate La Sal and to

dissolve it as a corporation.  Homestake took a number of actions in connection with La Sal's

dissolution:

a.     On December 14, 1962, Homestake caused La Sal to execute a "Mortgage

of Real Property" ("La Sal Mortgage") on the La Sal Property in favor of the Original

Shareholders, their heirs, executors, administrators, successors and assigns.  The La Sal

Mortgage was recorded on December 19, 1962.

b.     On December 20, 1962, pursuant to Paragraph 8 of the 1954 Agreement,

Homestake provided the Shareholders' Committee, and all shareholders of record, with

written notice of its decision to dissolve La Sal.

c.     On December 28, 1962, La Sal executed a Certificate of Dissolution

which was filed in Delaware and the escrow agent delivered the cancelled La Sal stock

certificates to Homestake.

d.    On December 31, 1962, La Sal executed documents conveying all of its assets to Homestake as a distribution in complete cancellation and redemption of its stock pursuant to a plan of complete liquidation.  La Sal executed a Bill of Sale, a Conveyance, Assignment and Bill of Sale, and a Mining Deed.  The Mining Deed conveyed the La Sal Property to Homestake.  The Mining Deed was recorded on January 8, 1963.

31.    As a result of the 1954 Agreement (as amended), Homestake's exercise of the Homestake Option, the liquidation and dissolution of La Sal, and the cancellation of La Sal stock, the former Shareholders of La Sal own only their proportionate interest in the proceeds of the 1954 Agreement ("Units" and "Unit Holders"), and Homestake became the direct owner of the La Sal Property.

32.    Homestake operated the La Sal Property through 1963, and paid Unit Holders approximately $4.2 million under the 1954 Agreement.  In or about 1964, Homestake discontinued operation of the La Sal Property, and no net profits have been generated since that time.

33.    In or about 1978, Homestake purchased Units from several Unit Holders, and today owns approximately six and one-half percent (6.5%) of the total La Sal Units.

34.    On or about August 8, 2005, Laramide entered into an Option, Sale and Purchase Agreement with Homestake and others (the "Laramide Option"), under which Laramide acquired an option to purchase, among other things, the La Sal Property.

35.    Laramide exercised the Laramide Option on or about November 4, 2005.  The Laramide Option contemplated a "first Closing" for consummation of the option with respect

to all the properties except the La Sal Property, and a "second Closing" for consummation of the option with respect to the La Sal Property.  The first Closing occurred in 2005.

36.      The purpose of the second Closing was to allow a period of time to cure, through litigation or otherwise, legal title matters regarding the transfer of the La Sal Property.

37.      Upon completion of the purchase of the La Sal Property, Laramide intends to mine the La Sal Property, and to make the payments to Unit Holders that are required under the 1954 Agreement (as amended).

38.      In late 2005, Laramide began efforts to obtain the unanimous consent of the members of the Shareholders' Committee to the transfer of the La Sal Property to Laramide pursuant to the Laramide Option.  Laramide has spent a significant amount of time, and significant resources in that effort:

a.      Laramide engaged investigators and counsel to locate all members of the Shareholders' Committee;

b.      Laramide discovered that all of the original members of the Shareholders' Committee were deceased save one – Redd;

c.      Laramide then located personal representatives of each of the deceased members of the Shareholders' Committee, and facilitated reopening of probated estates in order to empower the personal representatives to act;

d.      In cases where no personal representative had been appointed, Laramide facilitated opening and completion of probate proceeding for the purpose of appointing a personal representative and empowering him to act.

39.     Defendants T. Hudson and Bousum are co-personal representative of the estate of T.C. Hudson.  Defendant H. Hudson is the personal representative of the estate of H. Clay Hudson, Sr.  Defendant Henry is the personal representative of the estate of Fred Hartnett.  Defendant Richardson is the personal representative of the estate of Frank Richardson.  These Defendants, together with Defendant Redd, form the Shareholders' Committee.

40.     On or about June 6, 2008, Laramide formally requested that the Shareholders' Committee execute a Unanimous Written Consent ("Unanimous Consent"), consenting to Homestake's conveyance of the La Sal Property to Laramide La Sal, Inc., a wholly owned subsidiary of Laramide.

41.     Four of the five members of the Shareholders' Committee, T. Hudson and Bousum, H. Hudson, Henry and Redd, executed the Unanimous Consent.

42.     Defendant Richardson also initially indicated that he would execute the Unanimous Consent.  However, in a letter dated June 26, 2008, Richardson, through counsel, reneged and stated that he would refuse to give his consent unless Laramide agreed to purchase the Richardson family Units and pay Richardson and his family a total of $2,148,250.00, plus interest.  Richardson's counsel said "upon receipt by William Richardson of the first payment equal to Five Hundred Thousand Dollars ($500,000.00) of the [$2,148,250.00] Purchase Price in certified funds, Mr. Richardson will, as a member of the Shareholders' Committee, execute a consent in the form requested by Laramide Resources, Ltd."

43.     Laramide refused to pay Richardson to execute the Unanimous Consent.

-11-

44.    Richardson has never identified any concern about, or objection to, Laramide's acquisition of the La Sal Property.  Richardson has not identified any ground for his refusal to execute the Unanimous Consent, except for Laramide's refusal to accede to his demand for payment.

45.    On information and belief, Richardson does not have any legitimate reason for refusing to consent to Laramide's acquisition of the La Sal Property, and is merely preferring his own interests to those of the Unit Holders.

46.    On information and belief, shortly after Laramide refused to pay Richardson to execute the Unanimous Consent, Richardson sold some or all of the Richardson family's Units to Reams and/or TomCat, who are strangers to the 1954 Agreement and the 1961 Release.  On information and belief, Richardson also executed a power of attorney, or other document, purporting to assign, transfer, or delegate to Reams or TomCat, Richardson's authority and position as a member of the Shareholders' Committee under the 1961 Release.

47.    The 1961 Release does not authorize Richardson to sell, assign, transfer, or delegate his position, powers, or responsibilities as a member of the Shareholders' Committee to a third party.  The purported delegation of this authority is inconsistent with the justified expectations of the parties to the 1961 Release.

48.    After the transaction between TomCat, Reams and Richardson, Reams contacted Laramide and indicated that he would execute the Unanimous Consent, or would work to have Richardson execute the Unanimous Consent, if Laramide would agree to (i) convey the La Sal Property to a joint venture between Laramide and TomCat; and (ii) enter a contract with TomCat to mine the La Sal Property.

49.     Reams has not identified any concern about, or objection to, Laramide's acquisition of the La Sal Property.  Reams has not identified any ground for refusal to execute the Unanimous Consent, except for Laramide's refusal to accede to his demand.

50.     On information and belief, Reams does not have any legitimate reason for refusing to execute the Unanimous Consent, and is merely preferring his own interests to those of the Unit Holders.

## FIRST CLAIM FOR RELIEF
### Declaratory Judgment Against All Defendants
### Pursuant to 28 U.S.C. § 2201 (Laramide and Homestake)

51.     Plaintiffs reallege and incorporate herein by reference paragraphs 1 – 50 of this Complaint as if fully set forth herein.

52.     Homestake is a party to the 1954 Agreement (as amended) and the 1961 Release.  Homestake is the owner of the La Sal Property on which the La Sal Mortgage is recorded.

53.     Under the Laramide Option, Laramide is the equitable owner of the La Sal Property on which the La Sal Mortgage is recorded.

54.     An actual controversy exists between the parties regarding the meaning and enforceability of the 1954 Agreement (as amended), the 1961 Release, and the La Sal Mortgage, and in particular with respect to *inter alia*, the following issues under these documents:

a.     Whether Section 13 of the 1954 Agreement (as amended) prohibits the transfer of the La Sal Property from Homestake to Laramide without the unanimous consent of the Shareholders' Committee;

b.      Whether Section 13 of the 1954 Agreement (as amended) is void as a direct restraint on alienation of the La Sal Property;

c.      Whether Section 13 of the 1954 Agreement (as amended) is void as an unreasonable restraint on alienation of the La Sal Property, or because of a change in circumstances, including the lapse of time and the changed character of the parties;

d.      Whether Section 13 of the 1954 Agreement (as amended) terminated upon the liquidation of La Sal and the cancellation of all La Sal stock certificates;

e.      Whether the Shareholders' Committee's powers, if any, under Section 13 of the 1954 Agreement (as amended), are subject to a requirement of reasonableness, or an implied covenant of good faith and fair dealing;

f.      Whether the members of the Shareholders' Committee have a fiduciary duty to the Unit Holders they represent under the 1961 Release;

g.      Whether Section 11, or any other provision of the 1961 Release, empowers a member of the Shareholders' Committee to sell, transfer, or delegate his responsibilities and powers as a member of the Shareholders' Committee;

h.      Whether Richardson's purported sale, assignment, transfer, or delegation of his powers, responsibilities, or position as a member of the Shareholders' Committee to Reams is void;

i.      Whether Richardson's purported sale, assignment, transfer, or delegation of his powers, responsibilities, or position as a member of the Shareholders' Committee to Reams operates as a waiver and terminates his authority as a member of the Shareholders' Committee;

-14-

j.      Whether the transfer of the La Sal Property to Laramide may be completed as a matter of law without the consent of either Richardson or Reams.

55.    This dispute is ripe for adjudication because a substantial and immediate controversy exists between parties with clearly adverse interests.  Plaintiffs and Defendants are entitled to know whether Homestake may transfer the La Sal Property to Laramide.

56.    No subsequent event or the passage of time will vary the meaning of the 1954 Agreement (as amended), the 1961 Release, and the La Sal Mortgage or in any way affect the validity of the requested declaratory judgment.

57.    This controversy has measurable financial consequences.  The La Sal Property which is in dispute has enormous value and Plaintiffs are incurring ongoing costs in connection with their attempt to close the Laramide Option and develop the La Sal Property.

58.    This claim is not pending in litigation in any other forum and is appropriately adjudicated in this action.

59.    Accordingly, Homestake and Laramide are entitled to an order from this Court, declaring that:

a.      Section 13 of the 1954 Agreement (as amended) does not prohibit the transfer of the La Sal Property from Homestake to Laramide, is void as a direct restraint on alienation of the La Sal Property, and as an unreasonable restraint on alienation of the La Sal Property;

b.      Section 13 of the 1954 Agreement (as amended) terminated upon the liquidation of La Sal and the cancellation of all La Sal stock certificates;

-15-

c.      Neither Section 11 of the 1961 Release, nor any other provision of the 1961 Release empowers a member of the Shareholders' Committee to sell, transfer, or delegate his responsibilities, powers or position as a member of the Shareholders' Committee; Richardson's purported sale, assignment, transfer, or delegation of his powers, responsibilities, or position as a member of the Shareholders' Committee to Reams is void, and operates as a waiver and terminates his authority as a member of the Shareholders' Committee;

d.      The Shareholders' Committee's powers, if any, under Section 13 of the 1954 Agreement (as amended), are subject to a requirement of reasonableness, and an implied covenant of good faith and fair dealing, and the members of the Shareholders' Committee have a fiduciary duty to the Unit Holders they represent under the 1961 Release, each of which has been violated by Richardson and/or Reams; and

e.      Homestake's transfer of the La Sal Property to Laramide, pursuant to the Laramide Option, may go forward as a matter of law without the consent of either Richardson or Reams.

60.     A judicial declaration of the parties' respective rights and obligations pursuant to 28 U.S.C. § 2201 will effectively terminate the controversy among the parties.

**SECOND CLAIM FOR RELIEF**
**Marketable Record Title Act – Declaratory Judgment**
**Against All Defendants (Laramide and Homestake)**

61.     Plaintiffs reallege and incorporate herein by reference paragraphs 1 – 60 of this Complaint as if fully set forth herein.

-16-

62. Homestake is the owner of the La Sal Property by virtue of the Mining Deed that La Sal executed in Homestake's favor on December 31, 1962, and that was recorded on January 8, 1963.

63. Homestake has an unbroken chain of title of record with respect to the La Sal Property from and after the Mining Deed.

64. Under Utah Code Annotated, Section 57-9-1 *et seq.*, Homestake is therefore deemed to have a marketable record title to the La Sal Property, as defined in Section 57-9-8.

65. As the holder of marketable record title, under Utah Code Annotated, Section 57-9-3,

a. Homestake owns the La Sal Property free and clear of all interests, claims, or charges, whatsoever, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title, including the La Sal Mortgage, which was executed on December 14, 1962, and was recorded on December 19, 1962;

b. Homestake may transfer, and Laramide may take the La Sal Property free and clear of all interests, claims, or charges, whatsoever, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title, including the La Sal Mortgage; and

c. The La Sal Mortgage is void.

66. An actual controversy exists between the parties regarding the enforceability of the La Sal Mortgage. This dispute is ripe for adjudication because a substantial and immediate

controversy exists between parties with clearly adverse interests.  Plaintiffs and Defendants are entitled to know whether the La Sal Mortgage is valid and enforceable.

67.     No subsequent event or the passage of time will vary the meaning of the La Sal Mortgage or in any way affect the validity of the requested declaratory judgment.

68.     This controversy has measurable financial consequences.  This claim is not pending in litigation in any other forum and is appropriately adjudicated in this action.

69.     Accordingly, Homestake and Laramide are entitled to an order from this Court, declaring that:

   a.     Homestake owns the La Sal Property free and clear of all interests, claims, or charges, whatsoever, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title, including the La Sal Mortgage, which was executed on December 14, 1962, and was recorded on December 19, 1962;

   b.     Homestake may transfer, and Laramide may take the La Sal Property free and clear of all interests, claims, or charges, whatsoever, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title, including the La Sal Mortgage; and

   c.     The La Sal Mortgage is void.

### THIRD CLAIM FOR RELIEF
**Breach of Covenant of Good Faith and Fair
Dealing Against Richardson, Reams, and TomCat (Homestake)**

70.     Plaintiffs reallege and incorporate herein by reference paragraphs 1 – 69 of this Complaint as if fully set forth herein.

71.     Under the 1954 Agreement and the 1961 Release there is an implied covenant of good faith and fair dealing which imposes a duty on Richardson to exercise his powers, responsibilities, and position as a member of the Shareholders' Committee reasonably and in good faith.

72.     Richardson's duty of good faith and fair dealing prohibits him from doing anything purposefully to destroy or injure Homestake's rights to receive the fruits of the 1954 Agreement and the 1961 Release.  The duty of good faith and fair dealing further imposes on Richardson a duty to refrain from any purposeful conduct that will destroy or injure the Unit Holders' rights to receive the fruits of the 1954 Agreement and the 1961 Release.

73.     In refusing to execute the Unanimous Consent unless Laramide made an immediate cash payment to him of $500,000, and total payments to him of $2,148,250.00, Richardson breached the implied covenant of good faith and fair dealing in the 1954 Agreement and the 1961 Release.

74.     Richardson breached the covenant of good faith and fair dealing by exercising his position as a member of the Shareholders' Committee unreasonably and in a manner that is inconsistent with the justified expectations of the parties to the 1954 Agreement and the 1961 Release, and that deprives the parties to those agreements of the fruits of those agreements.

75.     As a result of Richardson's conduct, the La Sal Property remains dormant.  As a result, Homestake has derived no income from its ownership of the La Sal Property, and Homestake and the other Unit Holders have received no payments under the 1954 Agreement and the 1961 Release.

76. As a direct and proximate result of Richardson's actions Homestake has been injured and damaged, both as the owner of the La Sal Property, and the owner of 6.5% of the La Sal Units, in an amount to be determined at trial.

77. Should this Court determine that Richardson's attempted sale, transfer, or delegation of his responsibilities, powers or position as a member of the Shareholders' Committee to Reams and/or TomCat is not void, the 1954 Agreement and the 1961 Release impose a duty of good faith and fair dealing upon Reams and/or TomCat.

78. Reams and/or TomCat have breached the covenant of good faith and fair dealing by exercising their position as a member of the Shareholders' Committee unreasonably and in a manner that is inconsistent with the justified expectations of the parties to the 1954 Agreement and the 1961 Release, and that deprives the parties to those agreements of the fruits of those agreements.

79. As a direct and proximate result of Reams and/or TomCat actions, Homestake has been injured and damaged, both as the owner of the La Sal Property, and the owner of 6.5% of the La Sal Units, in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**Against Richardson Reams, and TomCat (Homestake)**

80. Plaintiffs reallege and incorporate herein by reference paragraphs 1 – 79 of this Complaint as if fully set forth herein.

81. As a member of the Shareholders' Committee, and an attorney-in-fact for the Unit Holders, Richardson had a fiduciary duty to advance the interests of the Unit Holders, and to prefer the Unit Holders' interests to his own interests.

82.     The Unit Holders reposed special trust and confidence in the members of the Shareholders' Committee, and expected that they would act in the best interests of the Unit Holders, and would prefer the Unit Holders' interests to their own interests.

83.     Instead, Richardson has refused to execute the Unanimous Consent in order to leverage his position as a member of the Shareholders' Committee into a buy-out of his family's Units at a preferential price, and to the detriment of the interests of the Unit Holders.

84.     Richardson breached his fiduciary duty to the Unit Holders by engaging in self-dealing and by failing to prefer the interests of the Unit Holders to his own personal interest.

85.     Richardson's conduct has at least delayed, and may entirely scuttle, Laramide's purchase of the La Sal Property, resulting in delay or permanent loss of payments under the 1954 Agreement and the 1961 Release, for which the Original Shareholders bargained, and from which the Unit Holders hoped to benefit.

86.     Because of Richardson's breach of his fiduciary duty, the La Sal Property lies dormant.  Homestake and the other Unit Holders are deriving no income from payments under the 1954 Agreement and the 1961 Release.

87.     As a direct and proximate result of Richardson's actions Homestake has been injured and damaged in an amount to be determined at trial.

88.     Should this Court determine that Richardson's attempted sale, transfer, or delegation of his responsibilities, powers or position as a member of the Shareholders' Committee to Reams and/or TomCat is not void, Reams and/or TomCat had a fiduciary duty

-21-

to advance the interests of the Unit Holders, and to prefer the Unit Holders' interests to their own interests.

89.     Reams and/or TomCat have breached their fiduciary duty to the Unit Holders by engaging in self-dealing and by failing to prefer the interests of the Unit Holders to their own personal interests.

90.     As a direct and proximate result of Reams' and/or TomCat's actions Homestake has been injured and damaged in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### Intentional Interference with Existing and Prospective Economic Relations Against Richardson Reams, and TomCat (Laramide)

91.     Plaintiffs reallege and incorporate herein by reference paragraphs 1 – 90 of this Complaint as if fully set forth herein.

92.     Richardson, Reams, and TomCat have interfered with Laramide's existing and prospective economic relations with Homestake and the Unit Holders by, among other things, wrongfully refusing to execute a Unanimous Consent to the sale of the La Sal Property from Homestake to Laramide, frustrating the purposes of the Laramide Option.

93.     Richardson, Reams, and TomCat have interfered with Laramide's existing and prospective economic relationships for an improper purpose and/or by an improper means, by breaching their fiduciary duty to Unit Holders and by breaching their duties of good faith and fair dealing to Homestake.

94.     As a direct and proximate result of the foregoing wrongful actions, Laramide has suffered damages in an amount to be determined at trial.

95.     Richardson, Reams, and TomCat actions have been willful, malicious, and/or have manifested a knowing and reckless indifference toward and disregard of the rights of Laramide.

## SIXTH CLAIM FOR RELIEF
### Injunctive Relief Against Richardson, Reams and TomCat (Laramide and Homestake)

96.     Plaintiffs reallege and incorporate herein by reference paragraphs 1 – 95 of this Complaint as if fully set forth herein.

97.     Plaintiffs will suffer irreparable harm without the issuance of injunctive relief.

98.     There is a significant risk that Plaintiffs will experience harm that cannot be compensated after the fact by monetary damages.

99.     It is difficult, if not impossible, to calculate damages for the harm that Laramide and Homestake will suffer without the issuance of an injunction.

100.    The threatened injury to Laramide and Homestake outweighs any harm that the injunction will cause to the Defendants.

101.    An injunction is not against the public interest.

102.    Plaintiffs are entitled to injunctive relief:

    a.     Enjoining Richardson, Reams and TomCat from breaching the covenant of good faith and fair dealing inherent in the 1961 Release;

    b.     Enjoining Richardson, Reams and TomCat from breaching their fiduciary duties to the Unit Holders, including Homestake;

c.      Enjoining Richardson from any attempted transfer of his position on the Shareholders' Committee or any powers and duties as a member of the Shareholders' Committee under the 1961 Release to Reams and/or TomCat; and

d.      Enjoining Reams and/or TomCat from attempting to exercise any powers or duties as a member of the Shareholders' Committee under the 1961 Release.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief;

1.      On the First Claim for Relief, a declaratory judgment that:

a.      Section 13 of the 1954 Agreement (as amended) does not prohibit the transfer of the La Sal Property from Homestake to Laramide, is void as a direct restraint on alienation of the La Sal Property, and as an unreasonable restraint on alienation of the La Sal Property;

b.      Section 13 of the 1954 Agreement (as amended) terminated upon the liquidation of La Sal and the cancellation of all La Sal stock certificates;

c.      Neither Section 11 of the 1961 Release, nor any other provision of the 1961 Release empowers a member of the Shareholders' Committee to sell, transfer, or delegate his responsibilities, powers or position as a member of the Shareholders' Committee; Richardson's purported sale, assignment, transfer, or delegation of his powers, responsibilities, or position as a member of the Shareholders' Committee to Reams and/or TomCat is void, and operates as a waiver and terminates his authority as a member of the Shareholders' Committee;

d.    The Shareholders' Committee's powers, if any, under Section 13 of the 1954 Agreement (as amended), are subject to a requirement of reasonableness, and an implied covenant of good faith and fair dealing, and the members of the Shareholders' Committee have a fiduciary duty to the Unit Holders they represent under the 1961 Release, each of which has been violated by Richardson and/or Reams and TomCat; and

e.    Homestake's transfer of the La Sal Property to Laramide, pursuant to the Laramide Option, may go forward as a matter of law without the consent of either Richardson or Reams.

2.    On the Second Claim for Relief, a declaratory judgment that:

a.    Homestake owns the La Sal Property free and clear of all interests, claims, or charges, whatsoever, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of Homestake's root of title, including the La Sal Mortgage, which was executed on December 14, 1962, and was recorded on December 19, 1962;

b.    Homestake may transfer, and Laramide may take the La Sal Property free and clear of all interests, claims, or charges, whatsoever, the existence of which depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title, including the La Sal Mortgage; and

c.    The La Sal Mortgage is void.

3.    On the Third Claim for Relief, an award of damages in favor of Homestake and against Richardson, Reams and TomCat in an amount to be determined at trial.

-26-

4.      On the Fourth Claim for Relief, an award of damages in favor of Homestake against Richardson, Reams and TomCat in an amount to be determined at trial.

5.      On the Fifth Claim for Relief, an award of damages in favor of Laramide against Richardson, Reams and TomCat in an amount to be determined at trial.

6.      On the Sixth Claim for Relief, an injunction:

a.      Enjoining Richardson from breaching the covenant of good faith and fair dealing inherent in the 1961 Release;

b.      Enjoining Richardson from breaching his fiduciary duties to the Unit Holders, including Homestake;

c.      Enjoining Richardson from any attempted transfer of his position on the Shareholders' Committee or any powers and duties as an attorney-in-fact under the 1961 Release to Reams; and

d.      Enjoining Reams from attempting to exercise any powers or duties as an attorney-in-fact under the 1961 Release to Reams.

7.      On all of Plaintiffs' Claims for Relief, such other relief as the Court deems appropriate.

-27-

DATED this 8th day of October, 2008.

DORSEY & WHITNEY LLP


By:  /s/ Milo Steven Marsden
     Milo Steven Marsden
     Attorneys for Plaintiffs


Plaintiffs' Address:

c/o Milo Steven Marsden
Dorsey & Whitney LLP
136 South Main, Suite 1000
Salt Lake City, Utah 84101


4825-5367-1938\6

-27-